UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                        Criminal No. 12-mj-01-01-LM

Shyloe Piper Johnson

**ORDER OF DETENTION PENDING TRIAL**

In accordance with 18 U.S.C. § 3142(f), a hearing was conducted on January 5, 2012, to determine whether to detain the defendant, Shyloe Piper Johnson, who has been charged by complaint with aiding and abetting bank robbery, in violation of 18 U.S.C. § 2113(a) and 2(a).[1] The court issued its detention order orally from the bench, and this written order summarizes those findings and rulings. See 18 U.S.C. § 3142(i)(1).

**Legal Standards**

Section 3142(f) of the Bail Reform Act, 18 U.S.C. §§ 3141-3156, "does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings" to the circumstances listed in 18 U.S.C. § 3142(f)(1) and (f)(2).

---

[1] Defendant conceded the existence of probable cause for the charge and waived her right to a preliminary hearing under Rules 5.1(a) and (e).

United States v. Ploof, 851 F.2d 7, 10 (1st Cir. 1988).  In this case, the government argued that a detention hearing was warranted under 18 U.S.C. § 3142(f)(1)(A), as the alleged crime, aiding and abetting bank robbery, is a "crime of violence."  Defendant argued that, while bank robbery qualifies as a "crime of violence" under § 3142(f)(1)(A), aiding and abetting that crime does not so qualify.

Under the Bail Reform Act, the term "crime of violence" is defined, in relevant part, as

> (A) an offense that has [as] an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or]
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4)(A)-(B)

Defendant conceded that the crime of bank robbery, 18 U.S.C. § 2113(a), qualifies as a crime of violence under the above definition.  Defendant did not concede, however, that under the Bail Reform Act, aiding and abetting a "crime of violence" was itself a "crime of violence."

In United States v. Mitchell, the First Circuit answered this question in the government's favor.  See 23 F.3d 1, 3 (1st Cir. 1994).  Concluding that conspiracy to commit arson was a crime of violence under the Bail Reform Act, the court reasoned:

2

> One who aids and abets an offense is punishable as a principal; 18 U.S.C. § 2, and the acts of the principal become those of the aider and abetter as a matter of law. . . . Accordingly, as other courts have held in analogous circumstances, aiding and abetting the commission of a crime of violence is a crime of violence.

Mitchell, 23 F.3d at 3 (internal citations and emphasis removed). Applying Mitchell here, the court finds that the crime charged, aiding and abetting bank robbery, is a crime of violence under 3156(a)(4), and, as such, the detention hearing was appropriately requested.

Pursuant to § 3142(f), the court must next determine whether any condition or combination of conditions set forth in § 3142(c) will reasonably assure the appearance of the defendant ("risk of flight") and the safety of any other person and the safety of the community ("dangerousness"). 18 U.S.C. § 3142(f); United States v. Patriarca, 948 F.2d 789, 791 (1st Cir. 1991). In making this determination, the court must consider the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt; (3) the history and characteristics of the accused, including family ties, past history, financial resources and employment; and (4) the nature and seriousness of the danger to any person or the community that would be posed by a release. 18 U.S.C. § 3142(g).

During the course of a hearing conducted pursuant to 18 U.S.C. § 3142, the government has the burden of persuading the court that

no condition or combination of conditions will reasonably assure (1) the defendant's presence at trial, United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988); or (2) the safety of another or the community, Patriarca, 948 F.2d at 793.  For its part, the government is required to prove risk of flight by a preponderance of the evidence and to establish dangerousness by clear and convincing evidence.  See id. at 792-93.

## Findings and Rulings

In the instant case, the government argued that defendant's release posed both a serious risk of flight and danger.  After weighing the evidence and balancing the factors laid out in 18 U.S.C. § 3142(g), the court found that the government met its burden under the dangerousness prong.

The court's finding of dangerousness was not controlled by one factor alone.  Rather, it was the combination of risk factors that persuaded the court that defendant's release, even on strict conditions, presents too great a danger to the community.  Those factors are listed below:

- Nature of the crime.  Defendant allegedly assisted her co-defendants in a violent bank robbery, which involved the apparent use of a gun, threats of physical harm and assaults on a bank teller and other customer-bystanders

at the bank.  The crime was violent, dangerous, and as described in the sealed affidavit, likely terrifying for those present at the bank while the crime was being committed.

- <u>Weight of the evidence.</u>  The evidence against this defendant is extremely strong and includes tape-recorded statements of defendant describing the bank robbery. Those recordings include statements by defendant during which she appears to be bragging and, at one point, laughing about the bank robbery.

- <u>History and characteristics of defendant.</u>  Defendant is young (25 years old) and immature.  She has a history of exercising poor judgment with respect to important life decisions.  She married a convicted felon at age 20, was a victim of domestic violence, and divorced him in August 2011.  In October 2011, defendant met her co-defendant, Mr. Williams, the lead actor in the bank robbery (who is a convicted felon with a lengthy record, including bank robberies, for which he has served time in a federal prison in California).  In November 2011, defendant went to California with Mr. Williams and remained there for approximately three weeks.  In her recorded statements,

defendant describes Mr. Williams as "my man." At the time of her arrest, defendant was residing with Mr. Williams in a hotel in Laconia.

- <u>Unaddressed substance abuse issues.</u>  Defendant has an unaddressed substance abuse problem and admits to consuming illegal drugs including crack cocaine.  From 2005 through 2010, defendant was ingesting 80 mg. Oxycontin pills on a daily basis.

- <u>Did not follow through on treatment.</u>  Several years ago, defendant obtained a drug abuse evaluation through Horizons Counseling Center in Gilford.  Although offered treatment, defendant declined to follow through with it.

- <u>Criminal record.</u>  Defendant has a criminal record, which includes two misdemeanors (shoplifting and criminal liability for conduct of another) and two driving offenses. Although her criminal record by itself may not support a dangerousness finding, it is a risk factor indicating a lack of respect for the law.

- <u>Close family ties but not strong influence.</u>  Defendant has strong ties to her family in New Hampshire.  However, those strong ties have not prevented the defendant from making poor life decisions.  Prior to living in a hotel with Mr.

6

      Williams, defendant was residing with her father, with whom she has a close relationship.  Unfortunately for defendant, her father cannot offer her a stable residence because he has recently been sentenced to serve time on state charges (habitual offender).

- Employment history.  Defendant has been unemployed since April 2011.  Her most recent employment history involves short-term jobs, although she appears to have worked steadily for the same employers from 2007-2009.

- Combined risk factors.  The nature of the charged crime is extremely violent, the weight of the evidence is strong, and the tape-recorded statements of this defendant give some indication that defendant delighted in her involvement in the crime.  These factors combined with her history and characteristics, as summarized above, provide clear and convincing evidence that defendant is too high a risk of danger to the community -- even if released under strict conditions.

  In sum, the court found that the government met its burden of proving that defendant's release, even on strict conditions, presents too serious a risk of danger to the community.  There are no conditions or combination of conditions that will reasonably assure the safety

of the community.  Accordingly, it is **ORDERED** that the defendant be detained pending trial.

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility, to be held separately, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of appearing in connection with court proceedings.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

January 6, 2011

cc: Behzad Mirhashem, Esq.
    Helen W. Fitzgibbon, Esq.
    U.S. Marshal
    U.S. Probation